Van Voorhis, J.
(concurring). The affidavit of the director of the Testing and Advisement Center of New York University, under the auspices of which this examination was authorized to be administered by the Supreme Court order of November 6, 1964, the affidavit of the president of the Psychological Corporation, and those of the psychologist employed in behalf of successful candidates for the apprenticeship program, and of the tutor-co-ordinator of the Defense League, all of whom appear to have acted in good faith, do cast doubt upon the dependability of the kind of aptitude test administered to these applicants under the order of November 6, 1964. The very fact that the *976 same examinations were given to applicants for apprenticeships in three successive classes, in the apparent belief that foreknowledge of the questions to be asked could not materially affect the scores — a belief which was dispelled by the outcome of the third examination in November, 1966 — lends no special confidence to this examining process. Several applicants, who had failed the previous examination, were asked the same questions again on this examination and obtained excellent ratings, as did other tutored applicants who were prepared in advance "by a professional tutoring service which had discernment if not exact foreknowledge of the questions to be asked. The two applicants who had failed the second examination were tutored by this service and were questioned by the tutor about the test problems which they had been given. This appears from the affidavit of the tutor-co-ordinator. Since these two successive examinations were thn same, he must have been familiar with the questions which were asked on the subsequent (Nov., 1966) examination. The New York University Testing and Advisement -Service reported from the results,of this examination that, in numerous instances, the grades did not furnish a true index of the abilities of the applicants. This could only have meant, since the testing service knew that it was giving the same examination that had been given twice before, that the November, 1966 test fell short of measuring relative eligibilities by objective standards as required by the terms of the order of November 6,1964. Nevertheless, the Appellate Division and Special Term have pointed out that the testing service did report the grades without recalling them, and made no recommendation that another examination be conducted. From the fact that the same questions were asked on three successive examinations (the only ones which have been given), it may be assumed to be difficult to prepare other questions in the case of aptitude tests of this nature. The entire system of giving this type of examination may need to be reconsidered, involving possible changes in the order of November 6,1964, in the light of subsequent experience. Other or supplementary methods of avoiding racial discrimination may need to be devised and put into effect in the building trades industries.
A start had to be made, however, and was made by the order of November 6, 1964, and the candidates who took the. examination in November, 1966 are not to blame for adapting themselves to the system as it had been prescribed by the court order in a *977 proceeding instituted by the Human Eights Commission. They have not been charged with any improper conduct, nor has any such charge been made against the professional tutoring service which prepared many of them so effectively for the examination. If a civil service, bar, medical or other professional examination had been thus conducted in a field of endeavor along traditional lines, its results might well be set aside either by the authority administering it or by the court. The present examiners make no pretension to scientific accuracy in these results. The problem concerns the system, rather than its implementation by a particular examination. The system is, at this stage, necessarily experimental. Changes are likely to be made in it which experience shows to be advisable. At present, in spite of its demonstrated shortcomings, it seems to me that this system established by the court order of November 6,1964 and implemented by the testing service should not be reversed in midstream, the rules should not be changed while the candidates for apprenticeships are playing the game, in the absence of evidence of ulterior conduct, after they have legitimately expended time and money in endeavoring to qualify themselves to be examined and hired as apprentices under the present procedure. Moreover, those who did not take the tutoring service, and passed the examination, should not be penalized on account of those who did.
Order affirmed, etc.